■ Marilyn B. Wolff, Individually and as Executrix of Ethel Weiss, Deceased, and as Administratrix of the Estate of Ilene Wolff, Deceased, et al., Appellants, v Berkley Associates, Respondent. — Order, Supreme Court, New York County, entered November 25, 1980, which denied plaintiff-appellant's motion to dismiss defendant's affirmative defenses and counterclaims and denied plaintiffs' motion for summary judgment on the first and second causes of action seeking declaratory and injunctive relief, unanimously reversed, with costs, on the law, and plaintiffs' motion granted to the extent of substituting Marilyn B. Wolff as administratrix of the estate of Ilene Wolff, deceased, in the place of Ilene Wolff as a plaintiff herein; dismissing defendant's affirmative defenses and counterclaims; directing summary judgment on the first cause of action and declaring that (1) plaintiffs have not and are not violating the terms of their leases or any substantial obligation of their tenancies by reason of the joinder of Apartment 17C with Apartment 17D, (2) plaintiffs have not and are not violating the terms of their leases or any substantial obligation of their tenancies by the installation and maintenance of a clothes washing machine and a clothes drying machine in Apartment 17C-17D; and directing summary judgment on the second cause of action, permanently enjoining the defendant, its agents, servants, employees, attorneys, successors and assigns from terminating the plaintiff's leases or tenancies upon any of the grounds set forth in the April, 1978 notices to cure. Plaintiffs-appellants are tenants of Apartment 17C-17D in the subject building, pursuant to two separate leases executed in September, 1977. Ethel Weiss, one of the original plaintiffs herein and mother of plaintiff Marilyn B. Wolff, resided in the apartment as a rent controlled tenant from 1948 until her death in 1980. Just prior to her tenancy, in 1948, respondent's predecessor in interest, Berkley House, Inc. (BHI), as owner of the building, joined Apartments 17C and 17D to form one apartment. None of the original plaintiffs in this suit were stockholders, officers or directors of BHI in 1948. At the time BHI did not file for building department approval of the alterations. In September, 1977 plaintiff Marilyn B. Wolff was the sole stockholder of BHI, the owner and landlord of the building. She, Ethel Weiss, Ilene Wolff and Andrew Wolff, collectively as tenants, entered into leases for the occupancy of Apartment 17C-17D, which provided that the air conditioning and "other appliances" etc., located in the premises were the property of the tenant, that Apartment 17C and 17D were physically connected, that the apartment was subject to rent control and that any approvals necessary to legalize the alterations previously made to join Apartments 17C and 17D were to be done at the landlord's expense. At that time a clothes washing and a clothes drying machine were located within the apartment. Contemporaneous with the execution of these leases, BHI entered into a contract of sale for the building with N.Y.F. Properties Corp. (NYF). NYF assigned its right to purchase under the con-

tract to Goldwep Realty Corp. (Goldwep), the nominee for defendant Berkley Associates (Berkley), which eventually took title. As part of the closing, Goldwep executed an assignment of lease and assumption agreement, agreeing to assume all of the leases in the building, including those of the plaintiffs, and to perform "all of the terms, provisions and conditions thereof". Goldwep then assigned title to one Zohar Ben Dov, and Ben Dov assigned title to the defendant Berkley. Berkley is a limited partnership founded by Ben Dov, its general partner, for the purpose of taking title to the building and converting it into a co-operative. This conversion was completed successfully in 1979. After taking title in November, 1977, defendant filed plans and an "Altered Building Application" to obtain approval from the Department of Buildings of the City of New York for the previous alterations made to join Apartments 17C and 17D. Defendant collected rent from plaintiffs until March, 1978 when allegedly in retaliation for plaintiffs lodging a complaint for lack of essential services, defendant mailed notices to cure to two of the four plaintiffs on April 21, 1978. Plaintiffs were cited therein for violating substantial obligations of their tenancies by breaking through a wall to join the two apartments without filing the necessary plans, etc., and by installing a clothes washer and clothes dryer in the apartment without the written permission of the landlord. Plaintiffs then brought this action for declaratory judgment and to enjoin defendant from terminating the leases. Defendant set up several affirmative defenses and counterclaims to the effect that the leases were unenforceable because they were unconscionable, a fraud on the taxing authorities, condoned an illegal alteration; that the operation of the washer and dryer in the apartment constituted waste; and claiming damages for additional rent and for the restoration of Apartment 17C-17D into two apartments. Plaintiffs' motion for summary judgment was denied by Special Term on the ground that issues of fact existed as to the unconscionability, illegality and enforceability of the leases. We find no such issues of fact. The "unconscionability", "illegality" and "fraud" alleged are raised in the most conclusory fashion, without specifying any factual detail in the pleadings. They appear to be based almost entirely upon the allegation that plaintiff Marilyn B. Wolff entered into "sweetheart" leases with her own wholly owned corporation, BHI, with no further showing of unconscionability, etc. The contract of sale was expressly conditioned upon NYF's consenting to BHI entering into the leases. All parties were represented by counsel. Various amendments to the leases were negotiated with Goldwep, defendant's nominee, upon the assignment of the contract and transfer of title. The leases were thus part of the bargain which the defendant made. Plaintiff alleges, and defendant does not affirmatively deny, that a reduction in the purchase price was made and accepted to compensate the purchasers for taking title subject to these leases. Defendant meets this assertion by stating that "contrary to the allegations set forth in the complaint and the moving affidavits that the sweetheart leases were negotiated, the truth is that they were rammed down the purchasers throat as a condition of the sales". We note that the purchaser had the alternative of declining the purchase and the assignees of declining the assignments. Concur — Sandler, J.P., Ross, Carro and Markewich, JJ.